**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DARRYL R. WORMUTH, *et al.*,<br>Plaintiffs,<br>v.<br>PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*<br>Defendants. | CIVIL ACTION NO.: 8:23-CV-02905-ABA |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM**
**IN RESPONSE TO THE COURT'S JULY 23, 2026 LETTER ORDER**

# TABLE OF CONTENTS

I. RELEVANT PROCEDURAL HISTORY ..... 1

II. THE MARYLAND CIRCUIT COURT ACTUALLY AND NECESSARILY DECIDED THE FIRST AMENDMENT/ARTICLE 40 ISSUES ..... 3

III. PLAINTIFFS DID NOT WAIVE OR FORFEIT PRECLUSION ..... 6

IV. THE COUNTY DEFENDANTS WAIVED QUALIFIED IMMUNITY AT SUMMARY JUDGMENT ..... 6

V. QUALIFIED IMMUNITY DOES NOT DEFEAT COUNTS I, II OR V ..... 7

VI. EFFECT ON PLAINTIFF WORMUTH ..... 14

VII. CONCLUSION ..... 15

**LEGAL AUTHORITIES**

**Case**

*Allen v. McCurry*,
449 U.S. 90 (1980) .......... 3

*Andrew v. Clark,*
561 F.3d 261 (4th Cir. 2009) .......... 13

*Anne Arundel Cnty. Bd. of Educ. v. Norville*,
390 Md. 93, 887 A.2d 1029 (2005). .......... 3, 4, 6, 14

*Campbell v. Lake Hallowell Homeowner's Ass'n,*
157 Md. App. 504, 852 A.2d 1029 (2004) .......... 4, 5, 6

*Connick v. Myers,*
461 U.S. 138 (1983) .......... 4, 10

*Cromer v. Brown,*
88 F.3d 1315 (4th Cir. 1996) .......... 10, 12

*Crouse v. Town of Moncks Corner,*
848 F.3d 576 (4th Cir. 2017) .......... 9, 12, 13

*DiPino v. Davis,*
354 Md. 18, 729 A.2d 354 (1999) .......... 8

*Durham v. Jones,*
737 F.3d 291 (4th Cir. 2013) .......... 9, 12

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) .......... 10, 12

*Gilliam v. Sealey*,
932 F.3d 216 (4th Cir. 2019) .......... 3

*Gomez v. Toledo*,
446 U.S. 635 (1980) .......... 7

*Grutzmacher v. Howard Cty.*,
851 F.3d 332 (4th Cir. 2017) .......... 10

*Henry v. Purnell*,
652 F.3d 524 (4th Cir. 2011) ........................................ 9

*Hope v. Pelzer*,
536 U.S. 730 (2002) ........................................ 9

*Hunter v. Town of Mocksville*,
789 F.3d 389 (4th Cir. 2015) ........................................ 11

*Janes v. State*,
350 Md. 284, 711 A.2d 1319 (1998) ........................................ 4

*Kentucky v. Graham*,
473 U.S. 159 (1985) ........................................ 7, 8

*Liverman v. City of Petersburg*,
844 F.3d 400 (4th Cir. 2016) ........................................ 10, 12

*Love-Lane v. Martin*,
355 F.3d 766 (4th Cir. 2004) ........................................ 10, 12

*Maciariello v. Summer*,
973 F.2d 295 (4th Cir. 1992) ........................................ 13

*Marrese v. American Academy of Orthopaedic Surgeons*,
470 U.S. 373 (1985) ........................................ 3

*McVey v. Stacy*,
157 F.3d 271 (4th Cir. 1998) ........................................ 10

*Migra v. Warren City School District Board of Education*,
465 U.S. 75 (1984) ........................................ 3

*Pickering v. Board of Education*,
391 U.S. 563 (1968) ........................................ 4, 10, 15

*Rankin v. McPherson*,
483 U.S. 378 (1987) ........................................ 10

*Ridpath v. Bd. of Governors Marshall Univ.*,
447 F.3d 292 (4th Cir. 2006) ........................................ 7, 8, 9, 11

*Ritchie v. Donnelly*,
324 Md. 344, 597 A.2d 432 (1991) ........................................ 8

*Sales v. Grant*,
224 F.3d 293 (4th Cir. 2000) ........ 8

*Snyder v. Phelps*,
562 U.S. 443 (2011) ........ 13, 14

*United States v. Duroseau*,
26 F.4th 674 (4th Cir. 2022) ........ 6

*United States v. Olano*,
507 U.S. 7253 (1993) ........ 6

*United States v. Robinson*,
744 F.3d 293 (4th Cir. 2014) ........ 6, 7

*Washington v. Pellegnorini*,
125 F.4th 118 (4th Cir. 2025) ........ 3

*Younger v. Harris*,
401 U.S. 37 (1971) ........ 3, 4, 7

**Statutes and Rules**

28 U.S.C. § 1738 ........ 3, 6

42 U.S.C. § 1983 ........ 3, 7 ,8

Rule 12(c) ........ 6, 15

Rule 56........ 7

Plaintiffs respectfully submit this supplemental memorandum in response to the Court's July 23, 2026 Letter Order (ECF No. 75). The Court requested briefing concerning: (1) the preclusive effect of the Circuit Court for Prince George's County's July 14, 2025 order; (2) qualified immunity if preclusion applies; (3) forfeiture of qualified immunity and preclusion; (4) the effect upon Plaintiff Wormuth; and (5) the current posture of the state proceedings.

The state court adjudication should be given preclusive effect as to the constitutional issues litigated and necessarily decided. This Court stayed the First Amendment claims precisely because the Maryland proceeding was deciding whether the same text messages constituted constitutionally protected speech. The Circuit Court then held, after remand and a message-by-message analysis, that fourteen of sixteen messages involved matters of public concern; that PGPD's termination decision was based at least in part on protected speech; that the County failed to prove interference with operations, impairment of duties, or a lawful independent basis for termination; and that those fourteen messages were protected under the United States Constitution and Maryland Declaration of Rights.

The County later settled the two remaining charges. The executed Settlement Agreement expressly sought a final and complete resolution of the administrative charges and pending appellate matter, preserved this federal action, and required the County/Department, if necessary, to dismiss the pending appeal, Appeal No. ACM-REG-0919-2025. The continued technical pendency of that appeal should not permit relitigating of constitutional issues already adjudicated.

## I. RELEVANT PROCEDURAL HISTORY

PGPD obtained and investigated private off-duty text communications from Plaintiff Wormuth's personal cellular telephone. On April 15, 2021, while the private-message investigation was unfolding, PGPD amended Chief's Special Order #21-003 to prohibit employees from using "culturally insensitive language" in "all communications, both internal and external." *See* **Exhibit 4.** The operative complaint alleges that no prior PGPD policy regulated private, non-public speech in that manner. Eight days later, on April 23, 2021, Brooke was suspended for alleged violations of the updated

Special Order based on private off-duty text messages that predated the amendment. Am. Compl. ¶¶ 62–63.

On June 22, 2021, Chief Aziz formally recommended disciplinary action against Wormuth and Brooke, including termination, based on the text-messages. *See* Compl. Exs. 5 and 6. The Complaint alleges that Robinson and McCreary supervised and approved the investigation and disciplinary recommendations, and that the matter was presented to Turner with approval from Alsobrooks. The challenged action was therefore not alleged to be the isolated conduct of a single superior. Brooke invoked Maryland's show-cause process to challenge the proposed discipline.

The Circuit Court initially ruled in Brooke's favor, finding that all sixteen messages were protected speech. Furthermore, the Circuit Court found that that the County did not meet its burden of proof that Brooke's speech interfered with the PGPD's operations, impeded his ability to perform his duties; or that he would have been terminated for lawful reason. The Appellate Court of Maryland vacated and remanded for a message-specific determination of whether all sixteen messages involved matters of public concern. On remand, the Circuit Court found that fourteen of the text messages involved matters of public concern in its July 14, 2025 opinion (ECF. No. 58-3). The court also found that the PGPD's decision to terminate Brooke was, at least in part, based on Brooke's protected speech, that the County did not meet its burden of proof that Brooke's speech interfered with the PGPD's operations, impeded his ability to perform his duties; or that he would have been terminated for a lawful reason. *See* ECF No. 58-3. The County filed another appeal (Appeal No. ACM-REG-0919-2025).

On April 16, 2026, Prince George's County and Brooke entered into a Settlement and Release Agreement that resolved the two text message charges remaining after the Circuit Court's decision on July 14, 2025. *See* ECF No. 67-1. As to both charges, the parties agreed that the appropriate punishment was a 5-day suspension to be served concurrently. *Id.* As part of the Agreement, Prince George's County agreed to dismiss the second appeal in the Appellate Court of Maryland. The resolution of the

two remaining charges and the dismissal of the second appeal means that the Circuit Court's decision on July 14, 2025 is now a final judgment by the State Court that will not be further appealed.

In its March 31, 2025 opinion, this Court expressly declined to decide whether the text messages were protected and stayed Counts I and V under *Younger v. Harris*, 401 U.S. 37 (1971), pending a final determination by the State courts regarding "whether Brooke and Wormuth's text messages constitute constitutionally protected free speech." ECF No. 48 at 11. The Court likewise stayed Count II, the First Amendment *Monell* theory concerning Special Order #21-003, because the underlying constitutional question remained undecided. ECF No. 48 at 27–29.

## II. THE MARYLAND CIRCUIT COURT ACTUALLY AND NECESSARILY DECIDED THE FIRST AMENDMENT/ARTICLE 40 ISSUES

Under 28 U.S.C. § 1738, federal courts must give state court judgments the same preclusive effect that the rendering state would give them. See *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985); *Gilliam v. Sealey*, 932 F.3d 216, 231 (4th Cir. 2019); *Washington v. Pellegrini*, 125 F.4th 118, 127 (4th Cir. 2025). Section 1983 supplies no exception to this rule. In actions brought in federal court under § 1983, state court judgments are to be accorded the preclusive effect mandated by § 1738 not only as to issues actually litigated in state court (issue preclusion), but also as to issues that the litigant could have raised but did not raise in the earlier state court proceeding (claim preclusion). *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 83-85 (1984).

Under Maryland preclusion law, the doctrine of *res judicata* "bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation." *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 106-07, 887 A.2d 1029 (2005). "The elements of *res judicata* under federal law are analogous to those under Maryland law: (1) identical parties, or parties in privity, in the two actions;

(2) the claim in the second matter is based upon the same cause of action involved in the earlier proceeding; and, (3) a prior and final judgment on the merits, rendered by a court of competent jurisdiction in accordance with due process requirements." *Norville,* 390 Md. at 108 (citing *Grausz v. Englander,* 321 F.3d 467, 472 (4th Cir. 2003)).

Identity of the parties and subject matter is unusually clear. This Court previously recognized that the state proceeding involved "the exact same text messages at issue in Counts 1 and 5." ECF No. 48 at 14. The County itself sought *Younger* abstention because the circuit court was considering whether the subject messages were protected free speech. Applying *Younger,* this Court deferred on the same constitutional questions. In the state court action, the County contested Brooke's First Amendment position, obtained appellate review and remand, litigated the public-concern issue again, lost again as to fourteen messages, and filed a second appeal. Expressly applying *Pickering v. Board of Education,* 391 U.S. 563 (1968) and *Connick v. Myers,* 461 U.S. 138 (1983) to the fourteen text messages, the circuit court determined that Brooke's "speech [was] protected under the U.S. Constitution and Maryland Declaration of Rights." *See* ECF No. 58-3.

The doctrine of collateral estoppel also applies to each issue of fact or law decided by the circuit court. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the doctrine of collateral estoppel renders that determination conclusive in a subsequent action between the parties, whether on the same or a different claim." *Janes v. State,* 350 Md. 284, 295, 711 A.2d 1319 (1998)(quoting *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502 (1989)). Resolution of the constitutional issues was essential to the circuit court's determination that the County could not lawfully punish Brooke for his protected speech. This Court must give preclusive effect to the circuit court's July 14, 2025 judgment.

The July 14, 2025 order is sufficiently final to trigger the full faith and credit requirement. First, Maryland law does not reduce finality for purposes of *res judicata* or collateral estoppel to whether every conceivable appellate step has been mechanically closed. In *Campbell v. Lake Hallowell*

*Homeowner's Ass'n,* 157 Md. App. 504, 852 A.2d 1029 (2004), the Appellate Court of Maryland adopted the modern rule that the pendency of an appeal does not suspend a judgment's operation for purposes of *res judicata* or collateral estoppel. *Campbell,* 157 Md. App. at 521–24. Federal law has long been the same. *Campbell,* 157 Md. App. at 522 (citing *Deposit Bank of Frankfort v. Board of Councilmen,* 191 U.S. 499, 514 (1903)).[1]

Second, post-judgment events confirm finality in this case. On April 16, 2026, Brooke and Prince George's County executed a Settlement Agreement resolving the two charges left after the Circuit Court dismissed fourteen. The recitals state that the parties intended to resolve the administrative charges, pending appellate matter, show-cause proceeding, and related matters and reach a "final and complete settlement" except for expressly preserved claims. *See* ECF No. 67-1. Section 2(a) required Brooke to dismiss the show-cause petition with prejudice and provides: "If necessary, the County/Department agrees to file a notice of dismissal in ACM-REG-0919-2025 and will be responsible for any costs assessed." *Id.* The Settlement Agreement expressly exempts this federal action from Brooke's release. *Id.* Brooke has since served a 5-day suspension for the two remaining administrative charges and was returned to good standing. There is no active administrative matter remaining to litigate.

The present record should also include recent correspondence between Brooke's counsel, and PGPD's legal counsel. On July 24, 2026, PGPD's legal counsel stated that she had asked the Office of Law to dismiss the appeal "when we signed the settlement," that "it seems like that didn't happen," and that she would follow up. **Exhibit 1** (emails). On July 29, 2026, PGPD's legal counsel represented that she "notified the OOL and it [dismissal] is in progress." *Id.* This correspondence confirms that continued docket pendency is not evidence of a substantive decision to continue appellate review and the circuit court's July 14, 2025 opinion is now final.

[1] The Supreme Court of Maryland has not yet decided the issue and the *Campbell* Court recognized a contrary minority view adopted in some states.

## III. PLAINTIFFS DID NOT WAIVE OR FORFEIT PRECLUSION

Waiver "is the intentional relinquishment or abandonment of a known right." *United States v. Olano,* 507 U.S. 725, 733 (1993). Forfeiture, by comparison, is the "failure to make the timely assertion of a right." *United States v. Robinson,* 744 F.3d 293, 298 (4th Cir. 2014); *See also United States v. Duroseau,* 26 F.4th 674, 678 n.2 (4th Cir. 2022). Neither may apply to this Court's duty to apply preclusion. When Plaintiffs opposed summary judgment in October 2025, the County's second appeal was pending, and the two surviving administrative charges remained unresolved. The settlement that disposed of the remaining charges, contemplated dismissal of the appeal, and preserved this federal case was not executed until April 16, 2026. Plaintiffs raised preclusion in their April 29, 2026 motion to lift the stay, ECF No. 67—after the settlement materially changed the finality of the state proceedings and before adjudication of summary judgment. This is not a case in which a party possessed a completed prior judgment throughout dispositive briefing, deliberately withheld it, lost, and invoked preclusion only afterward. There is no valid basis to find Plaintiffs waived application of 28 U.S.C. § 1738 in this case.

Additionally, courts recognize both that preclusion is ordinarily an affirmative matter and that courts may invoke *res judicata* or collateral estoppel *sua sponte* in appropriate circumstances to avoid unnecessary judicial waste. *See e.g., Norville,* 390 Md. at 105; *Campbell,* 157 Md. App. at 528-29. That rationale has unusual force in this case because this Court itself stayed the free-speech constitutional counts so Maryland could resolve the same protected-speech questions. The County cannot claim surprise: it litigated that issue for years, appealed the adverse ruling twice, knew why the federal case was stayed, and knew from ECF No. 67 that Plaintiffs asserted preclusion within two weeks of the Settlement Agreement.

## IV. THE COUNTY DEFENDANTS WAIVED QUALIFIED IMMUNITY AT SUMMARY JUDGMENT

The County Defendants affirmatively raised qualified immunity in their Rule 12(c) motion, ECF No. 37-1, demonstrating knowledge of the defense. This Court did not decide that defense as to

Counts I, II and V because *Younger* supplied a basis for staying those claims and the Couty advocated for the application of *Younger*. After discovery and after the Circuit Court's July 2025 constitutional ruling, the County Defendants filed a Rule 56 motion on October 17, 2025. Their summary-judgment motion/memorandum did not seek judgment on Count I based on qualified immunity. That omission was not caused by ignorance or mistake; it followed an earlier express assertion. The Fourth Circuit has held that "A party who identifies an issue, and then explicitly withdraws it, has waived the issue." *Robinson,* 744 F.3d at 298 (citing *United States v. Rodriguez,* 311 F.3d 435, 437 (1st Cir. 2002)). Likewise, a district court "is entitled to refuse to consider" qualified immunity where a party belatedly raises the issue, here raised only by this Court post summary judgment pleadings, not by the County Defendants. *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 305 (4th Cir. 2006)(citing *e.g., Montalvo v. Park Ridge Police Dep't,* 170 F. Supp. 2d 800, 803 (N.D. Ill. 2001)); *see also Sales v. Grant,* 224 F.3d 293, 296 (4th Cir. 2000)(recognizing that qualified immunity can be waived if not "squarely presented" to the district court).

Qualified immunity is also an affirmative defense. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Since qualified immunity is a defense, the burden of pleading it rests with the defendant. …It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful."). Although affirmative defenses omitted from a party's Answer, as in this case, may sometimes be raised at later stages of the case, absent unfair surprise, a party may forfeit an argument by failing to press it at the dispositive stage at which judgment is sought. The Court should be reluctant to award Rule 56 judgment on a ground the movant omitted after deliberately briefing other grounds. If the Court nevertheless reaches Qualified Immunity, the record must be construed in Plaintiffs' favor and preclusive findings given full effect.

## V. QUALIFIED IMMUNITY DOES NOT DEFEAT COUNTS I, II OR V

If reached, qualified immunity should be denied. In a federal § 1983 action, "[q]ualified immunity may be invoked by a government official sued in his personal, or individual, capacity." *See*

*Kentucky v. Graham,* 473 U.S. 159, 165-67 (1985). By contrast, the defense of qualified immunity "is not available in an official-capacity suit brought against a government entity or a government officer as that entity's agent." *Ridpath,* 447 F.3d at 306 (citing *Graham,* 473 U.S. at 165-67). Accordingly, qualified immunity cannot apply to Count II of the Amended Complaint, and it may apply, if at all, to Count One only as to each defendant in their individual capacities. Likewise, qualified immunity cannot apply to Count V (Art. 40 retaliation).

Unlike federal claims brought under § 1983, "neither the local government official nor a local governmental entity has available any governmental immunity in an action based on rights protected by the State Constitution." *DiPino v. Davis,* 354 Md. 18, 51, 729 A.2d 354 (1999); *Ritchie v. Donnelly,* 324 Md. 344, 373-74, 597 A.2d 432 (1991). The "personal/official capacity distinction applied in § 1983 actions" does not apply when considering State Constitutional claims. *DiPino,* 354 Md. at 51. The Supreme Court of Maryland has explained:

> This Court has consistently held that a public official who violates the plaintiff's rights under the Maryland Constitution is personally liable for compensatory damages. . . . This liability for damages resulting from unconstitutional acts is in no way based upon the 'official/individual capacity' body of law which has developed in federal § 1983 claims. Liability has been imposed upon the government official when his unconstitutional actions were in accordance with or dictated by governmental policy or custom. Liability has also been imposed when the unconstitutional acts were inconsistent with governmental policy or custom. Moreover, contrary to the view of the circuit court in the present case, liability has been imposed upon the official when he was acting in the scope of his employment.

*Ritchie,* 324 Md. at 370-71, 597 A.2d at 445 (internal citations omitted).

While there is no *respondeat superior* liability for local government entities or officials in federal § 1983 actions because of the distinction between personal and official capacity claims, "local governmental entities do, indeed, have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of their employment." *DiPino,* 354 Md. at 51-52. Accordingly, the federally recognized qualified immunity defense for personal capacity claims cannot apply to Count V.

As to the personal capacity claims alleged in Count I, summary judgment should be denied even if the Court were to consider the possibility of qualified immunity, which has not been asserted by the defendants as a basis for summary judgment. Qualified immunity shields government officials "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011)(*en banc*). As an affirmative defense, "[t]he burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Durham v. Jones,* 737 F.3d 291, 299 (4th Cir. 2013)(citing *Meyers v. Baltimore Cnty., Md.,* 713 F.3d 723, 731 (4th Cir. 2013)). "To prevail under qualified immunity, [the defendants have] to show either that there was no constitutional violation or that the right violated was not clearly established." *Durham,* 737 F.3d at 299 (citing *Gregg v. Ham,* 678 F.3d 333, 341 n.7 (4th Cir. 2012) (citing *Henry,* 652 F.3d at 531)); *see also Crouse v. Town of Moncks Corner,* 848 F.3d 576, 583 (4th Cir. 2017)(quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011)(qualified immunity is defeated where it appears "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.")).

"[A] constitutional right is clearly established when 'its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ridpath,* 447 F.3d at 313 (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). That is, "'in the light of pre-existing law the unlawfulness must be apparent,'" *id*. (quoting *Hope,* 536 U.S. at 739 quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)), but "the very action in question [need not have] previously been held unlawful," *id*. (internal quotation marks omitted), because "'general statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question,'" *Hope,* 536 U.S. at 741 (quoting *United States v. Lanier,* 520 U.S. 259, 270-71 (1997)).

Long before April 2021—the timing of defendant's retaliation in this case (charging and suspending Brooke and Wormuth administratively and seeking their termination)—it was clearly established that the government may not punish an employee for speaking out about a matter of public concern.[2] *See, e.g., Rankin v. McPherson,* 483 U.S. 378, 383 (1987)("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."); *Connick v. Myers,* 461 U.S. 138, 142 (1983)("For at least 15 years it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."); *Liverman v. City of Petersburg*, 844 F.3d 400, 406 (4th Cir. 2016)("Public employees may not 'be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public concern.")(quoting *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968)); *Love-Lane v. Martin,* 355 F.3d 766, 776 (4th Cir. 2004)("The government may not retaliate against a public employee who exercises her First Amendment right to speak out on a matter of public concern."); *McVey v. Stacy,* 157 F.3d 271, 277 (4th Cir. 1998)("The First Amendment protects public employees from termination of their employment in retaliation for their exercise of speech on matters of public concern."); *Cromer v. Brown,* 88 F.3d 1315, 1325 (4th Cir. 1996)("in 1991, it was established that a government official 'may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.'" (quoting *Rankin v. McPherson,* 483 U.S. 378, 383 (1987)(citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

[2] In December 2019, PGPD General Orders Manual, Volume I, Chapter 34, Social Media (attached as **Exhibit 2**) acknowledged that, "While employees are off-duty and using their personal equipment, they have the right to speak as private citizens on matters of public concern. Matters of public concern may include, but are not limited to, political or social issues and certain conditions of employment, such as workplace safety conditions and government misconduct." The 2019 policy refers the reader to *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Grutzmacher v. Howard Cty.,* 851 F.3d 332 (4th Cir. 2017); and *Liverman v. City of Petersburg*, 844 F.3d 400 (4th Cir. 2016). Thus, the Defendants in 2021 could not persuasively claim that the constitutional right at issue—Brooke's right to speak as a private citizen on matters of public concern while off-duty and using his own personal equipment without fear of retaliation—was unforeseeable or not clearly established because their own guidance acknowledged it.

"To ring the 'clearly established' bell, there need not exist a case on all fours with the facts at hand. In other words, 'the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity.'" *Hunter v. Town of Mocksville,* 789 F.3d 389, 401 (4th Cir. 2015)(quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 251 (4th Cir. 1999) (holding that First Amendment rights of an off-duty officer communicating about concealed weapons were sufficiently established by precedent regarding off-duty officer's entertainment performances)). "Rather, the unlawfulness must be apparent in light of pre-existing law." *Id.* (citing *Trulock v. Freeh,* 275 F.3d 391, 400 (4th Cir. 2001)). Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Ridpath,* 447 F.3d at 313 (quoting *Hope,* 536 U.S. at 741). The "salient question" is whether the state of the law at the time of the events in question gave the officials "fair warning" that their conduct was unconstitutional. *Id.*

In this case, pre-existing case law makes clear that reasonable persons in the position of the defendants would have been aware that charging Brooke with misconduct and seeking his termination for the remarks in his private text messages violated his constitutionally protected free-speech rights. There are no grey areas here. In its July 14, 2025 opinion, the state court identified the subject matter of each text message forming the basis of a charge against Brooke. *See* ECF No. 58-3 at pp. 5-6 (attached as **Exhibit 3** for reference).

The subject matter of the text messages at issue may be categorized as matters involving: (1) criminal charges, fraud, discrimination and/or misconduct involving police officers and/or the PGPD [#1, #2, #11, #12]; (2) PGPD training, promotion of inexperienced/unqualified officers, PGPD operations and related safety/reliability issues [#10, #14, #15]; (3) local crime, homicides, shootings, arrests, and public safety conditions in/around the district [#3, #4, #5, #6, #7, #13, #16]; and (4) policing strategies and command directives affecting deployment in high-crime areas [#14, #16]. In light of the existing case law in April 2021 that identified these topics as matters of public concern, the Defendants cannot reasonably claim they were uncertain regarding whether Brook's speech in the text messages

qualified as matters of public concern—they plainly did at least as to the fourteen (14) text messages identified above.

In *Cromer,* 88 F.3d at 1326-27, the Fourth Circuit held that comments regarding racial discrimination within a law enforcement agency are clearly "matters of serious public import." The Court further noted cases in which the plaintiffs' First Amendment rights were "clearly established," "even under *Pickering's* balancing test." *Cromer,* 88 F.3d at 1327 n.8 (citing cases involving *inter alia* voiced safety concerns, agency mismanagement, police officers making allegations of police misconduct, and plaintiffs informing the FBI of employer misconduct); *see also Love-Lane,* 355 F.3d at 776 (the Fourth Circuit has "repeatedly recognized that a public employee's speech about racial discriminatory practices" involves "a matter of public concern.").

In *Liverman*, 844 F.3d at 408, the Fourth Circuit described a police officer's "unfavorable comments on the operations and policies of the [Police] Department" as "arguably the 'paradigmatic' matter of public concern." The Court found that the officer's comments, "which addressed risks posed by the Department's inexperienced supervisors" and promotion policies in the Department that, in plaintiff's view, promoted unqualified officers, crossed "a line to the point that imperils the public welfare" and therefore were matters of public concern. *Liverman*, 844 F.3d at 410 (citing *Goldstein v. Chestnut Ridge Volunteer Fire Co.,* 218 F.3d 337, 353 (4th Cir. 2000)(holding that firefighter's complaints about inadequate training and unsafe procedures during emergency calls were matters of public concern); *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006)("Exposing governmental inefficiency and misconduct is a matter of considerable significance.").

In *Hunter,* 789 F.3d at 401, the Fourth Circuit reiterated that it had long been clearly established that "an employee's speech about serious governmental misconduct, and certainly not least of all serious misconduct in a law enforcement agency, is protected." (quoting *Duram,* 737 F.3d at 303-04); *Duram,* 737 F.3d at 303 ("We have been clear that where public employees are speaking out on government misconduct, there speech warrants protection."); *Crouse,* 848 F.3d at 589 (speech about

police "misconduct and abuses of power" involves matters of public concern; stating "[p]olice misconduct and abuses of power often involve matters of life and death [a]nd police departments are particularly vulnerable to the temptation to circle the wagons and 'wall themselves off from public scrutiny and debate.'"); *Andrew v. Clark,* 561 F.3d 261, 273 (4th Cir. 2009)(speech regarding a police shooting and internal investigation are matters of public concern).

The Supreme Court has instructed that speech deals with a matter of public concern when it can be "fairly considered as relating to any matter of political, social, or other concern to the community," or when it is a subject of "legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps,* 562 U.S. 443, 453 (2011). Discussions of specific local homicides, shootings, arrests of armed or fleeing suspects, and the volume of death investigations are classic examples of this category—matters of immediate community interest and public safety. At bottom, pre-existing legal precedent involving the same or closely related subjects made the circuit court's message-by-message analysis straight forward and obvious. For example, the circuit court expressly applied *Snyder's* categorical description of matters of public concern to the DC-homicide texts because of geographic proximity to Prince George's County and the shared border. *See* ECF No. 58-3 at p.6, n.4. For the same reason, Defendants cannot reasonably claim they believed punishing Plaintiffs' clearly protected speech was lawful in 2021.

It should be noted that the challenged communications were private text messages on a personal device, sent off duty, and not voluntarily disseminated to the public by Plaintiffs. "Public employees do not forfeit the protection of the Constitution's Free Speech Clause merely because they decide to express their views privately rather than publicly." *Cromer,* 88 F.3d at 1326 (citing *Givhan v. Western Line Consol. Sch. Dist.,* 439 U.S. 410, 413-14 (1979)); *accord, Maciariello v. Summer,* 973 F.2d 295, 299 (4th Cir. 1992)(citing *Rankin v. McPherson,* 483 U.S. 378 (1987)); *Crouse,* 848 F.3d 576, 590 (4th Cir. 2017). Likewise, a statement's "inappropriate or controversial character … is irrelevant to the

question whether it deals with a matter of public concern."[3] *Snyder v. Phelps,* 562 U.S. 443, 444 (2011)(quoting *Rankin,* 483 U.S. at 387). The Circuit Court ultimately found that the County failed to prove interference with operations or impairment of Brooke's duties as to the protected messages both before, and after remand. This was obvious given the private nature of the text messages. Because the subject matter of the texts so clearly involved matters previously determined to be of significant public concern, the Defendants cannot find refuge in qualified immunity.

## VI. EFFECT ON PLAINTIFF WORMUTH

The Court's March 2025 opinion supplies an important starting and ending point for Wormuth. Although he was not a party to Brooke's show-cause case, the Court found the messages exchanged between Brooke and Wormuth sufficiently intertwined that the state court's resolution of Brooke's protected-speech question would "necessarily decide whether Wormuth's text messages are protected by the First Amendment and Article 40 of the Maryland Declaration of Rights." ECF No. 48 at 14–15. It would be anomalous indeed were this Court to reach a contrary determination regarding Wormuth's claims when they are based largely on the same text messages exchanged between Wormuth and Brooke. Under the circumstances, there is sufficient privity between Brooke's position and Wormuth's position that preclusion should apply equally to Wormuth's claims. *Norville,* 390 Md. at 108 (citing *Grausz v. Englander,* 321 F.3d 467, 472 (4th Cir. 2003)(preclusion requires identical parties, *or parties in privity*, in the two actions). Even if preclusion is technically unavailable to Wormuth because he was not a party to the show cause proceedings, the Circuit Court's analysis would nevertheless have powerful relevance for Wormuth's retaliation claims. The state adjudication substantially informs the

---

[3] The record demonstrates the defendants acted to punish plaintiffs and terminate their employment not because they were unsure of the protected nature of their speech, but rather despite the speech's protected nature because they didn't like the character of the text messages, messages they described as "racist" in nature. Even this Court and the Appellate Court of Maryland has described the text messages as "outrageous" and "racist and demeaning messages." ECF No. 48 at pp. 4, 15. Even if these characterizations are warranted, they remain "irrelevant to the question whether it deals with a matter of public concern." *Snyder,* 562 U.S. at 444.

underlying constitutional and causation questions, and this court should not render an inconsistent ruling.

## VII. CONCLUSION

The procedural history presents a strong case for issue preclusion. This Court intentionally stayed the First Amendment claims rather than conduct its own *Pickering* analysis because Maryland was deciding whether the same messages were constitutionally protected. The Appellate Court required message-specific analysis; the Circuit Court performed it; fourteen messages were adjudicated protected; the County failed to establish operational interference; and protected speech was found to have contributed to the termination decisions. Finding the County could not lawfully punish or terminate Brooke for his protected speech, the Circuit Court dismissed fourteen of the sixteen text messages charged against Brooke.

The County had a full and fair opportunity to litigate. It appealed, obtained remand, litigated and lost again, and appealed again. It then settled the only two charges left standing. The settlement sought final resolution, preserved this federal action, and contemplated dismissal of the second appeal. PGPD legal counsel has confirmed that she has instructed the Office of Law to dismiss the appeal. Plaintiffs raised preclusion immediately after that material change and before summary judgment was adjudicated. The County, by contrast, knew of a potential Qualified Immunity claim, yet intentionally omitted it from their Rule 56 motion. The Court should find the affirmative defense forfeited for the pending motion or deny it on the merits.

August 5, 2026

Respectfully Submitted,

/s/Ray M. Shepard
Ray M. Shepard, Bar No. 09473
The Shepard Law Firm, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Phone: 410-255-0700
Facsimile: 443-773-1922
Email: Ray@Shepard.Law
*Attorney for Plaintiffs*